Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5558 | **DATE** | 10/23/2001 |
| **CASE TITLE** | IBR Corp. vs. Yuntek International, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order denying defendant's motion to dismiss (3-1). Ruling on that motion set for 11/2/01 is vacated. Defendant's motion for leave to conduct discovery regarding personal jurisdiction is denied as moot. Discovery is ordered closed on 4/30/02. Pretrial order to be filed by 5/31/02; and response to any motions in limine by 6/14/02. Pretrial conference set for 6/28/02 at 4:00 p.m. Trial set for 7/8/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | **2** number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 24 2001 date docketed | |
| | Notified counsel by telephone. | | | 10 |
| | Docketing to mail notices. | | CM docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | DOCKETING 01 OCT 23 PM 5:18 | 10/23/2001 date mailed notice | |
| courtroom MPJ deputy's initials | | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IBR CORPORATION, d/b/a/ HARBORTOWN )
DIVISION, an Illinois corporation, )
                                     )
      Plaintiff,               )
                                     )   No. 01 C 5558
v.                              )
                                     )
YUNTEK INTERNATIONAL, INC., a.k.a. )
FANWAY (YUNTEK) INTERNATIONAL,    )
INC.,                             )
                                   )
      Defendant.         )

### MEMORANDUM OPINION AND ORDER

IBR Corporation ("IBR"), an Illinois corporation with its principal place of business in Chicago, entered into a contract with Yuntek International Inc. ("Yuntek") for the sale of plush and vinyl bean bag covers. When the covers arrived in Illinois, they had been stretched, crushed, creased and stressed in the course of shipment. After failed attempts to repair the damage, IBR sued Yuntek in Illinois state court for rescission of the contract and damages for payments already made. Yuntek removed to federal court on the basis of diversity jurisdiction and moves to dismiss for lack of personal jurisdiction. I deny the motion.

I.

Yuntek's president, David Chou, submits an affidavit in which he swears that "[a]t no time did any agent of YUNTEK go to the state of Illinois in connection with this transaction. YUNTEK

performed no tasks related to this transaction in the State of Illinois either directly or through any agent or representative." IBR submits the affidavit of its vice president, Judith Brosnan, who says that Chou traveled to IBR's office in 1996 to solicit IBR's business, and that IBR entered into a contract with Yuntek that was performed in 1996. Brosnan also says that she met with Chou at several trade shows in Chicago, where Chou asked when IBR was going to place additional orders with Yuntek. The contract that is the subject of this dispute arose out of a purchase order from IBR to Yuntek in 2000. Brosnan also says that, after IBR notified Yuntek of the problem with the shipment, Chou came to IBR in May 2001 to inspect the defective covers. He brought a hand iron and suggested that IBR iron out the creases in the covers by hand. In reply, Chou admits that he personally attended a trade show in Chicago, but that he was not an exhibitor or participant. He says that he met an independent broker at the trade show who brought him to IBR's offices to meet, among others, the president of IBR. Chou claims that "[n]o business was solicited or discussed on that occasion." He says that was his only face-to-face meeting with IBR representatives prior to the dispute, but he admits that he visited IBR "for a second time, but only in late 2000 and only in an attempt to collect on Yuntek's outstanding receivable from [IBR] for the shipments at issue in these proceedings."

IBR, as the plaintiff, has the burden of establishing a prima

facie case of personal jurisdiction, *Michael J. Neuman & Assocs., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir. 1994), but on a motion to dismiss under Rule 12(b)(2), it is "entitled to have any conflicts in the affidavits resolved in its favor," *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). Chou's second affidavit could be construed as implying that he was at trade shows in Illinois in his personal capacity rather than as the president of Yuntek, but he does not claim that it was personal business that brought him to IBR's offices in 1996 and in May 2001. Drawing all inferences in favor of IBR for the purposes of this motion, the affidavits demonstrate that Chou was in Illinois on at least three occasions in his capacity as an agent of Yuntek: (1) in 1996 to solicit business at IBR's offices; (2) at an Illinois trade show where he inquired about future business from IBR; and (3) in May 2001 to try to cure the defect in the shipment and collect on the balance owed by IBR.

II.

The Illinois long-arm statute authorizes personal jurisdiction to the limits of the constitution, so I need only determine whether the exercise of jurisdiction over Yuntek would comport with the due process guarantees of the Illinois and federal constitutions. *RAR, Inc.*, 107 F.3d at 1276. IBR does not argue that there is general jurisdiction over Yuntek, rather that there is specific jurisdiction "'arising out of or related to the defendant's

3

contacts with the forum.'" *Id.* at 1277. Yuntek must have "purposely availed" itself of the benefits and protections of Illinois law such that it could anticipate being haled into court here. *Id.* In a breach of contract case, "it is only the dealings between the parties in regard to the disputed contract that are relevant to minimum contacts analysis." *Id.* at 1278.

The 1996 visit to IBR's offices did not lead directly to the contract at issue in this case, so Yuntek argues that it is not a significant contact for due process purposes. IBR argues that the 1996 visit was part of the negotiation of this contract. *See Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1361 (7th Cir. 1996). Where the parties have "an ongoing commercial relationship involving repeated transactions over time, it may be difficult to say exactly which past dealings regard a specific contract." *RAR, Inc.*, 107 F.3d at 1278. The only relevant contacts, however, are those that "either bear on the substantive legal dispute between the parties or inform the court regarding the economic substance of the contract." *Id.* In *RAR*, the court declined to consider past transactions between the parties because the only similarity to the disputed transaction was the identity of the parties; "[i]n terms of both the goods and services exchanged and the geographical context of the transactions, the disputed contract [wa]s quite unlike the past agreements." *Id.* at 1279. However, "strong similarities between

4

transactions immediately suggest the substantive relevance of the past transactions." *Id.* *See also Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996) (Court may "consider the overall relationship between [the defendant, the forum], and the litigation.").

Here the 1996 and 2000 transactions are sufficiently similar. In 1996, after the meeting at IBR, Yuntek shipped product samples of bean bag, futon and chair covers to IBR's offices in Illinois. After IBR approved the samples, it placed an order and Yuntek shipped the covers, which were manufactured in China, to IBR. Brosnan Aff. ¶¶ 10-11. In the summer of 2000, IBR sent Yuntek samples of bean bag, "roll up" and bed rest covers that it wanted Yuntek to manufacture. Yuntek copied the products and shipped samples to IBR in Illinois. After IBR approved the quality of the samples, it placed an order. *Id.* at ¶ 14. The goods were shipped from Yuntek's factory in China to IBR in Illinois, though the parties dispute who was responsible for shipping and when title passed. The transactions involve similar products, geographical context, and course of dealing--an exchange of samples prior to the order. The 1996 transaction, including Chou's presence in Illinois to negotiate the contract, is therefore a relevant contact for personal jurisdiction.

Chou's inquiry about forthcoming orders at the trade shows in Illinois could be construed as fortuitous, rather than a purposeful

contacts--*e.g.*, he merely happened to encounter an IBR representative while he was in Illinois on other business. *See Uni-Bond, Ltd. v. Schultz*, 607 F. Supp. 1361, 1370 (E.D. Wisc. 1985) (Warren, J.) (Defendant's visit to plaintiff while in the area on other business was "solely 'as a matter of convenience'" and was not a purposeful contact that supported personal jurisdiction.). Yuntek does not make this argument, however, so it is waived. Yuntek's attendance at trade shows in Chicago, where he discussed business dealings with IBR, is a relevant, purposeful contact for jurisdictional purposes. *See Scovill Mfg. Co. v. Dateline Elec. Co.*, 461 F.2d 897, 900 (7th Cir. 1972) ("Indeed, the sole purpose of these shows was to promote business contacts and provide a place where business relationships would be initiated.").

The most significant contact for the purposes of this dispute, however, is Chou's visit to IBR in May 2001 to attempt to remedy the damage to the covers that occurred during shipment. Chou says that he only traveled to Chicago to "attempt to collect on Yuntek's outstanding receivable from [IBR] for the shipments at issue in these proceedings." Chou (2) Aff. ¶ 15. By his own admission, under penalty of perjury, he was in Illinois conducting business related to this dispute on behalf of Yuntek. The statement in Chou's second affidavit directly contradicts his statement in his first affidavit, also sworn under penalty of perjury, that "[a]t no time did any agent of YUNTEK go to the State of Illinois in

6

connection with this transaction." Chou (1) Aff. ¶ 7. Yuntek does not argue, but could be construed to be invoking, a line of cases that says that visits to the forum merely to collect on a debt or resolve the underlying dispute are not contacts that should be considered for jurisdictional purposes. *See, e.g., Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 796 (6th Cir. 1996). But the Seventh Circuit has upheld the exercise of personal jurisdiction where the defendant visited the forum once as part of preliminary contract negotiations and a second time to try and resolve "misunderstandings" about the plaintiff's performance. *Wisconsin Elec. Mfg. Co., Inc. v. Pennant Prods., Inc.*, 619 F.2d 676, 677 (7th Cir. 1980). There the visits "were significant in the formation of the contract and [the defendant]'s efforts to have it satisfactorily performed." *Id.* at 678. Even if I credit Yuntek's version of the story, at least one district court in this circuit has interpreted *Pennant Products* to mean that visits to resolve disputes or collect debts are significant contacts. *See Mac's Eggs, Inc. v. Rite-Way Agri Distribs., Inc.*, 656 F. Supp. 720, 727 (N.D. Ind. 1987) (Miller, J.). But crediting IBR's version, as I must on this motion, Chou's visit to try and remedy the damages so that IBR would pay on the contract, when considered together with its prior visits to Illinois in which it solicited business from Yuntek, is sufficient to establish a prima facie case for personal jurisdiction. *See Pennant Prods.*, 619 F.2d at 677 ;

7

*F. McConnell & Sons, Inc. v. Target Data Sys., Inc.*, 84 F. Supp. 2d 961, 968 (N.D. Ind. 1999) (Lee, C.J.); *United States Gypsum Co. v. All Tank Sales & Supply Co.*, 977 F. Supp. 1340, 1343 (N.D. Ill. 1997) (Bucklo, J.). *See also Mid-America Tablewares*, 100 F.3d at 1361 (Minimum contacts inquiry examines totality of circumstances).

I must conduct an independent analysis of due process under Illinois law, but I may look to federal due process law for guidance. *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990). Because Yuntek offers no reason to otherwise construe the facts in light of the Illinois Constitution, I find that the exercise of personal jurisdiction over it would not violate requirements of Illinois due process. *See Michael J. Neuman & Assocs.*, 15 F.3d at 725.

IBR and Yuntek dispute the facts and legal conclusions surrounding the shipment of the goods, and Yuntek asks for discovery on this issue. Because I find that Chou's admitted visits to Illinois provide a sufficient basis for denying the motion, I need not reach the questions regarding shipping, and no discovery is necessary. The motion to dismiss is DENIED.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: October 23, 2001